IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **DARIUS EGGLESTON,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-24-0663 |
| **JOHNS HOPKINS HEALTH SYSTEM CORPORATION,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff Darius Eggleston ("Plaintiff") filed this employment-based lawsuit against his former employer, Johns Hopkins Health System Corporation ("JHHS"). ECF 1. The parties engaged in discovery and participated in an unsuccessful settlement conference before JHHS filed the instant motion for summary judgment, ECF 23. Despite being represented by counsel, Plaintiff has not responded to the dispositive motion, and the time for doing so has long expired. This Court has carefully considered the merits of JHHS's motion under the relevant standard and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025); *see also Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013) (noting the district court's obligation to review an unopposed summary judgment motion "and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law" (internal citation and quotations omitted)). For the reasons stated herein, JHHS's motion will be granted.

I.   BACKGROUND

In evaluating a motion for summary judgment, this Court considers the factual record in the light most favorable to Plaintiff as the non-moving party. JHHS operates a power plant on its

1

East Baltimore Campus ("the Power Plant"). ECF 23-2 (Kruer Decl.) ¶ 2. There are three primary groups of non-managerial employees at the Power Plant: Technicians, Stationary Engineers, and Skilled Workers. *Id.* ¶ 4, ECF 23-3 (Eggleston Dep.) at 20:10-21:4, 21:10-20. The Skilled Workers and Stationary Engineers belong to a union, 1199 SEIU United Healthcare Workers East. *Id*. at 14:15-15:1. As of February 15, 2023, the workers at the Power Plant (including Plaintiff) were racially diverse and included four Black employees, Three White employees, two Asian Employees, one American Indian or Alaska native, one Hispanic/Latino employee, and one employee identifying as both White and Hispanic/Latino. ECF 23-4 (Freeman Decl.) ¶ 3.

JHHS hired Plaintiff as a housekeeper in 2011. ECF 23-3 at 17:20-18:4. In 2013, he successfully applied for a Skilled Worker Position in the Power Plant. *Id.* at 19:4-18. In that capacity, JHHS allowed Plaintiff to complete a plumbing apprenticeship and to sit with the Stationary Engineers while he studied for the engineering license exam. *Id.* at 25:20-27:9.

Plaintiff's work performance suffered from certain performance issues. He received repeated counseling and warnings for attendance, including occasions in November 2018, August 2019, June 2020, January 2021, May 2021, and September 2022. *Id.* at 45:17-46:3, 46:8-15, 61:1-9, 68:15-69:6, 69:8-19, 91:21-95:7. He also received counseling for being out of uniform or in open-toed shoes on multiple occasions. *Id.* at 30:14-31:12, 61:17-62:3, 97:19-98:6. On one occasion in 2017, he received time off pending an investigation of his altercation with a supervisor. *Id.* at 35:12-41:12. In 2020, he received counseling after accusing his supervisor of disrespecting him. *Id.* at 53:12-57:21. Finally, in 2019, 2020, and 2021, Plaintiff was counseled for taking excessive time away from his job tasks. *Id.* at 48:4-12, 58:20-60:20, 82:16-83:9.

Plaintiff's performance issues affected his performance evaluations, which showed overall ratings of either "Needs Improvement" or sometimes a low rating in the "Meets Expectations" scale. *Id.* at 29:4-30:6, 33:9-35:9, 41:14-42:12, 50:10-52:1, 69:21-71:8, 89:10-91:19; ECF 23-5, Ex. A. Plaintiff's direct supervisor, George Keen, repeatedly wrote comments suggesting ways in which Plaintiff could be more productive, remain in the work area, and stay focused on his work tasks. ECF 23-5 at ¶ 3 and Ex. A; ECF 23-3 at Ex. 17, 19.

Plaintiff has been a practicing Muslim throughout his employment at JHHS. ECF 23-3 at 15:4-10. His supervisors fully accommodated his religious practices, including time for prayer and the ability to leave work for Jumu'ah (or Friday) prayers. *Id.* at 129:15-131:16, 133:10-135:6. In May 2022, Plaintiff reported for work on Eid at his normal start time. *Id.* at 163:3-165:10. About 15 minutes into his shift, Plaintiff asked Keen's supervisor, Phillip Kruer, if he could take the day off for Eid. *Id.* Kruer inquired what Eid was and mentioned that Plaintiff was already at work. *Id.* Plaintiff stated that he was going to use his sick time and took the day off without any adverse consequence. *Id.*

In October, 2020, during a "listening session" at the Power Plant, Plaintiff raised concerns about discrimination. *Id.* at 148:18-149:16; ECF 23-6 (Hughes Decl.) ¶ 3. Christine Hughes, JHHS's Senior EEO Compliance Consultant, attempted to contact Plaintiff multiple times, but he did not respond. ECF 23-6 ¶ 3. Hughes closed her investigation due to his lack of cooperation. *Id.* In February, 2021, Plaintiff inquired about the status of the investigation. *Id.* ¶ 4. Hughes reopened the investigation and interviewed Plaintiff, Kruer, and Marcial Padilla, the HR Business Partner who works with the Power Plant. *Id.* Hughes concluded that Plaintiff had not been discriminated against and sent Plaintiff a letter describing her conclusion. *Id.* and Ex. B.

On January 24, 2022, Plaintiff complained to Padilla about a picture that had been taped on the control room window. ECF 23-3 at 139:16-147:12 and Ex. 28. Plaintiff stated that the picture depicted a "Muslim in a priest outfit with a full beard" and said that his co-workers were laughing at the picture and one said "he got a beard like" Plaintiff. *Id.* Plaintiff asked Keen if he could take the picture down and Keen responded, "why, you're not Jewish, you're Muslim." *Id.* However, the picture was removed the same day and Keen counseled the Stationary Engineer who posted the picture that it was inappropriate. *Id.*; ECF 23-2 ¶ 5.

Plaintiff testified that on September 26, 2022, Keen approached Plaintiff when on a break and asked him to accompany him to the North Plant. ECF 23-3 at 165:16-169:13. Eggleston stated that when he asked, "Why?" Keen responded, "you want respect, respect is earned, Nigger." *Id*. Plaintiff stated that Keen has not used the N-word or any other racial slur or offensive comment at any other time. *Id.* at 169:14-170:9. Keen denies ever using a racial slur towards Plaintiff. ECF 23-2 ¶ 4. Plaintiff submitted another request for investigation to Hughes, including this incident, in January 2023. ECF 23-6 ¶ 5. Hughes investigated, and her investigation did not substantiate Plaintiff's complaints. *Id.* and Ex. C.

In November 2022, JHHS approved Plaintiff's request for intermittent FMLA leave. ECF 23-3 at 182:4-9. He revised his request in early 2023, and JHHS again approved it. *Id.* at 182:10-12. Plaintiff stated that all of his requests for FMLA leave were approved. *Id.* at 182:13-185:6. However, on one occasion in January 2023, when Plaintiff said he as leaving for an appointment, Keen stated, "If I were you, I would not leave work before the meeting" scheduled by the Director of Facilities Compliance, Carole Martens. *Id.* at 183:7-185:9; ECF 23-7 ¶ 5.

On December 8, 2022, Kruer asked Plaintiff to assist with reinstalling chiller condenser heads in the south plant. ECF 23-2 ¶ 6. Plaintiff asked Kruer whether he was sure he wanted

4

Plaintiff to do it, claiming that he had heard that Kruer thought that the Technicians did a better job. ECF 23-3 at 101:13-103:11. Plaintiff refused to assist and told Kruer that he had recorded the exchange on his cell phone. ECF 23-2 at ¶ 6 and Ex. A.

JHHS's Senior Director of Facilities Management asked Martens to step in and counsel Plaintiff about his job performance. ECF 23-7 ¶ 3. Martens talked with Kruer, Keen, and Plaintiff, along with a person who had witnessed the exchange about the chiller condenser heads. *Id.* ¶ 3, 4. After the investigation, Martens decided that Plaintiff had engaged in Major and Critical Violations under JHHS's Corrective Action Policy ("CAP") when he failed or refused to perform his assigned duties, engaged in the unauthorized or inappropriate use of electronic devices, lied during the investigation, and engaged in disruptive conduct that interfered with other employees' ability to perform job duties. *Id.* She decided that Plaintiff should receive a Final Warning, which JHHS issued on January 3, 2023. *Id.*; ECF 23-3 at 100:6-101:12 and Ex. 23. Plaintiff grieved the Final Warning, but the grievance was denied. ECF 23-3 at 117:12-17.

On January 25, 2023, at about 7 a.m., Kruer gave Plaintiff a box of bags for a job in the south plant cooling towers. ECF 23-2 ¶ 5. However, Plaintiff did not arrive to the work area until 9 am. *Id.* Plaintiff claims that he was working in the south plant cooling towers the entire time. ECF 23-3 at 118:2-120:15. On February 6, 2023, Martens and Keen met with Plaintiff to discuss his absence from his assigned work area, and Plaintiff claimed that Kruer had not given him the bags. ECF 23-2 ¶ 5; ECF 23-7 ¶ 6. Video evidence contradicted his claim. *See* ECF 23-7 ¶ 6.

Martens determined that Plaintiff had again committed Major and Critical Violations under the CAP: lying about having received the box of bags, being out of his work area, and not doing his assigned duties on January 25. *Id.* ¶ 7. Martens determined that Plaintiff's employment should be terminated. *Id.* Martens and Keen informed Plaintiff of his termination on February 15,

2023. ECF 23-3 at 118:2-21 and Ex. 26. Plaintiff grieved his termination, but the termination was upheld. *Id.* at 129:9-14. The union did not advance a further challenge. ECF 23-2 ¶ 8.

## II.     LEGAL STANDARD

JHHS seeks summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. That rule provides that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)). Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the

case "necessarily renders all other facts immaterial." *Id*. at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. DISCUSSION

#### A. Count I – Title VII Discrimination

Count I of Plaintiff's complaint asserts a Title VII claim that JHHS terminated him because of his race or religion. To prove such a claim, a plaintiff can either provide direct evidence of intentional discrimination or proceed under the burden-shifting framework announced in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff's only direct evidence of discrimination is Keen's alleged use of the N-word. However, he has not demonstrated any connection between that incident and his termination. Direct evidence of discriminatory treatment must "both reflect directly the alleged discriminatory attitude" and "bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). Plaintiff has not shown that Keen played any role in the decision to terminate his employment. Moreover, Plaintiff claims that Keen used the offensive word in September 2022 and his employment was terminated in February 2023. As a result, the incident is insufficient to constitute direct evidence of discriminatory termination.[1] *See Hill v. Lockheed*

---

[1] To the extent Plaintiff contends that the incident with the picture on the control room window constitutes direct evidence of discrimination on the basis of religion, the contention would fail

*Martin Logistics Mgmt.*, 354 F. 3d 277, 286 (4th Cir. 2004) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden")); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) ("Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action.")

With no direct evidence of discrimination, Plaintiff's claim must be analyzed under the *McDonnell Douglas* framework. Plaintiff initially "has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If that burden is satisfied, the burden shifts to JHHS "to articulate some legitimate, nondiscriminatory reason for the" termination. *Id.* at 253. JHHS's burden is one of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). The burden then shifts bask to Plaintiff to show by a preponderance of the evidence that JHHS's proffered reasons were pretextual for intentional discrimination. *Burdine*, 450 U.S. at 253. In other words, Plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).

Plaintiff fails at the first step – the prima facie case of discrimination. A prima facie case requires proof that he:

(1) was a member of a protected class;
(2) was qualified for his job and his job performance was satisfactory
(3) suffered an adverse employment action; and

---

for the same reasons. Keen was not a decisionmaker and the incident happened a full year before Plaintiff's termination.

(4) was treated differently from similarly situated employees not in his protected class. *See White v. BFI Waste Servs., Inc.*, 375 F. 3d 288, 295 (4th Cir. 2004). Plaintiff has obviously made no evidentiary showing at all, since he did not respond to the summary judgment motion. But the record evidence amply reflects his history of unsatisfactory job performance, including his repeated violations of JHHS's CAP.

This Court has considered the allegations in Plaintiff's Complaint and EEOC charge relating to "similarly situated employees" who received preferential treatment. By Plaintiff's own admission, the three men he identified, Scott Borowy, William Foos, and John Kuspchinskas, did not work at the Power Plant and reported to a different supervisor. ECF 23-3 at 186:8-197:15. They are therefore not similarly situated under the law. *See, e.g.*, *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) (rejecting a proposed comparator who had a different immediate supervisor); *Haywood v. Locke*, 387 F. App'x 355, 359-60 (4th Cir. 2010) (finding comparator not similarly situated due to different immediate supervisor); *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) (same). Plaintiff also identified the Technicians at the Power Plant as comparators, but they too are not comparators because they held different positions than Plaintiff. *See, e.g., Lightner*, 545 F.3d at 265. Plaintiff also has offered no evidence that any of his proffered comparators engaged in similar conduct to his own. He therefore has not established even a *prima facie* case of discrimination on the basis of race or religion, and summary judgment is warranted on Count One.

    B.  Count Two - Retaliation

In Count Two, Plaintiff asserts that JHHS terminated his employment in retaliation for his discrimination complaints. ECF 1. Again, Plaintiff offers no direct evidence of retaliation, so

he must proceed under the *McDonnell Douglas* framework. *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 246 (4th Cir. 2015). A *prima facie* case of retaliation requires evidence that the plaintiff engaged in protected activity, that he was subjected to a materially adverse action, and that a causal connection exists between the protected activity and the adverse employment action. *Id.* at 250. If JHHS then articulates a non-retaliatory reason for the termination, Plaintiff bears the burden of proving that the reason was a pretext for retaliation. *Id.* Ultimately, Plaintiff must demonstrate that he would not have been fired but-for his complaints of discrimination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Plaintiff first complained of discrimination in 2020-2021. *See* ECF 23-6 ¶¶ 3, 4. His employment continued for over two years, with his performance reviews generally reflecting that he "meets expectations." *See* ECF 23-5 at Ex. A. He alleges in his complaint that he filed another charge of discrimination on January 5, 2023 and amended it on February 15, 2023. ECF 1 ¶ 19. In fact, though, he did not file another EEOC charge until May 2023. ECF 23-2 at 185:16-186:7, Ex. 34. He did make an informal complaint to Hughes in January, 2023, for a series of allegations including the N-word incident involving Keen. ECF 1 ¶ 14; ECF 23-6 ¶ 5. While that internal complaint was relatively contemporaneous to his firing, timing alone is not enough to establish a *prima facie* case of retaliatory discharge. *See Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) ("[T]emporal proximity . . . is simply too slender a reed on which to rest" a retaliation claim); *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 397 (D. Md. 2004) ("[T]emporal proximity does not establish a claim of retaliation."). The mere fact of a discrimination complaint does not prohibit an employer from imposing discipline for misconduct. *See id.* at 397 ("The sword of an EEOC complaint cannot be used as a shield to protect an employee from the consequences of inappropriate behavior that is incontrovertibly below the reasonable

expectations of his employer."). Because Plaintiff offers nothing more than timing to establish a causal connection between his discrimination complaints and his discharge, summary judgment must be granted.

### C. Count Three – FMLA

In his Complaint, Plaintiff asserts that JHHS "terminated plaintiff for an alleged absence from duty coinciding with a visit to his doctor as authorized by" a grant of FMLA leave. ECF 1 ¶ 35. By Plaintiff's own assertion, then, JHHS permitted him the FMLA leave he requested. At his deposition, he suggested that he premised his claim, in part, on Keen's suggestion that he should not attend a doctor's appointment before going to the meeting with Martens. ECF 23-3 at 250:1-10. But Plaintiff concedes that he went to the appointment anyway, with no adverse consequence. *Id*. at 182:13-185:9. He offers no evidence of any interference with his use of FMLA leave at any time.

And Plaintiff has never suggested that, on the date of the incident leading to his termination, he missed work for any medical purpose or attempted to exercise any FMLA rights. Instead, he alleges that he was working the entire time. *Id*. at 119:21-120:4. As he offers no evidence of any interference with his FMLA rights, summary judgment is appropriate.

### IV. CONCLUSION

For the reasons stated above, Defendant's unopposed Motion for Summary Judgment, ECF 23, will be granted. Judgment is entered in favor of Defendant. The Clerk is directed to close this case. A separate Order of Judgment follows.

Dated: August 13, 2025                                      /s/
                                                   Stephanie A. Gallagher
                                                   United States District Judge